# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| ALLIANCE TECHNOLOGY GROUP, LLC,    ) ) ) | |
|      Plaintiff,    ) ) | |
| v.    ) ) | Civil Action No. 3:12CV701–HEH |
| ACHIEVE 1, LLC, *et al.*,    ) ) | |
|      Defendants.    ) | |

## MEMORANDUM OPINION
### (Granting Motion to Dismiss in Part)

Between 2010 and 2012, a cohort of employees at Alliance Technology Group,

LLC ("Alliance") left to join Achieve 1, LLC ("Achieve 1")—a competing company

formed by Michael Thomas ("Thomas") and Carrie Thomas. Thomas had served as

Alliance's Vice President of Southeast Division. In response, Alliance brought this

lawsuit against Achieve 1, its related entities, and the employees who left Alliance. The

Complaint asserts claims for breach of fiduciary duty, misappropriation of trade secrets,

and civil conspiracy, among others.[1] Many of the allegations accuse all "Defendants" of

---

[1] Each cause of action is based on Virginia common law or statute. This Court exercises its diversity jurisdiction under 28 U.S.C. § 1332, because Alliance is a citizen of Maryland, all Defendants appear from the pleadings to be citizens of Virginia, and the amount in controversy exceeds the $75,000 threshold for diversity jurisdiction. (Alliance Tech. Group, LLC's Resp. to Dec. 17, 2012 Order, ECF No. 33.) As a federal court exercising diversity jurisdiction, the Court must apply Virginia's choice of law rules. *Felder v. Casey*, 487 U.S. 131, 151 (1988) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). Because each claim against Ralston is a tort, Virginia determines the applicable law according to *lex loci delicti*, meaning that the law of the place of the wrong governs all matters related to the claim. *See Dreher v. Budget Rent-A-Car Sys.,*

committing tortious conduct collectively, without distinguishing among the individually-named defendants. Based on this attempt to lump all Defendants together, Defendant William Ralston ("Ralston") moves under Fed. R. Civ. P. 12(b)(6) to dismiss the claims against him. For the reasons that follow, the Motion will be granted, in part, and denied, in part.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewed accordingly, the alleged facts are as follows.

Alliance is a "Value-added Reseller" of information technology services, providing data storage, networking systems, software, and services to a wide-ranging business clientele. (Compl. at ¶ 19.) While serving as its Vice President of the Southeast Division between April 2010 and April 2012, Thomas directed a staff of eight employees. (*Id.* at ¶¶ 25-26.) One of these employees was Defendant William Ralston ("Ralston"), who was hired on March 19, 2012—barely one month before Thomas's resignation. (*Id.* at ¶¶ 25, 29.)

Each Alliance employee in the Southeast Division, including Thomas and Ralston, had access to Alliance's trade secrets and proprietary information. (*Id.* at ¶¶ 31-33.)

---

*Inc.*, 634 S.E.2d 324, 327 (Va. 2006). There is no dispute that all of the events alleged in Alliance's Complaint occurred in Virginia, so Virginia law governs.

These included sales forecasts, data tracking tools, sales presentations, financial data, and customer lists, among other things. (*Id.* at ¶¶ 21-22, 33.) All Alliance employees expressly agreed that this information was proprietary and that each would protect the information as confidential. (*Id.* at ¶ 32.) Likewise, Alliance took its own measures to protect the confidential nature of this information. (*Id.* at ¶ 23.)

Thomas and his wife, Carrie Thomas, formed Achieve 1 and several related entities about four months before Thomas began employment with Alliance.[2] (*Id.* at ¶¶ 9, 25, 34.) He never informed Alliance of his plans to compete in the industry, or even that he had formed Achieve 1. (*Id.* at ¶ 34.) As early as November 2011, while still employed by Alliance, Thomas and his subordinates began to use Alliance's trade secrets and proprietary information for the benefit of Achieve 1, thereby usurping Alliance's business opportunities for their own benefit. (*Id.* at ¶ 35.) At that time, Achieve 1 began to sell some of the same services and products offered by Alliance, competing directly for business from Alliance's existing and prospective customers. (*Id.* at ¶ 36.)

As but one example, Achieve 1 sold about $1 million in such products to an existing Alliance customer on May 18, 2012—approximately one month after Thomas resigned from Alliance. (*Id.*) Achieve 1 could not have reasonably executed this and other such transactions without using Alliance's certifications, trade secrets, and goodwill. (*Id.* at ¶ 36.) Numerous specific examples of similar transactions between

---

[2] These entities are: Achieve 1, LLC; Achieve 1 Solutions, LLC; and, Achieve 1 Cloud Service, LLC. The distinction among these companies is of no relevance to the Motion to Dismiss. For simplicity, the Court addresses all three companies collectively as "Achieve 1."

Achieve 1 and Alliance's customers are described in the Complaint, all occurring while Alliance continued to employ Thomas or at least some of his subordinates who would later resign to join Achieve 1. (*Id.* at ¶¶ 37-49, 55-60.) Every "Former Employee Defendant" is alleged to have engaged in at least one specific transaction—except Defendant Ralston. (*See id.*) There is no allegation that he engaged in any particular transaction. And unlike the other "Former Employee Defendants," Alliance does not indicate exactly when, or under what conditions, Ralston ended his employment with Alliance. (*Id.* at ¶¶ 65, 66.)

Upon learning of these events, Alliance filed a ten-count Complaint against the "Former Employee Defendants," Carrie Thomas, and all Achieve 1 entities. Pertaining to Ralston, who is grouped with the other "Former Employee Defendants," Alliance asserts nine claims: (1) breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; (3) misappropriation of trade secrets; (4) conversion; (5) tortious interference with contract; (6) tortious interference with existing contract, contract expectancy, prospective business relationship and economic advantage; (7) common law conspiracy; (8) statutory business conspiracy under Va. Code §§ 18.2-499, -500; and, (9) fraud. Ralston moves to dismiss each of these claims under Fed. R. Civ. P. 12(b)(6), in large part because of Alliance's attempt to levy allegations against the "Defendants" indiscriminately, never offering any allegations against Ralston specifically.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to the general pleading requirements of Rule 8, the "circumstances" of fraud must be pled with particularity, except that allegations of scienter only need to be alleged generally. Fed. R. Civ. P. 9(b); *Iqbal*, 556 U.S. at 686. These "circumstances" are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).

## III. DISCUSSION

Alliance's allegations paint a detailed picture with respect to most Defendants; but specifics as to Ralston's involvement are conspicuously absent. The circumstances of his involvement in the conspiracy are attenuated in several respects. He was hired a mere month before Thomas's resignation and nearly four months after the conspiracy is alleged to have begun.[3] Unlike the other conspirators, Alliance has failed to indicate the date of Ralston's resignation, stating only that he "now works for the Achieve 1 Defendants." (*Compare* Compl. at ¶ 13 *with* Compl. at ¶¶ 65-66.) With the exception of Ralston, each former employee named in the Complaint is alleged to have participated in at least one specific transaction. (*Id.* at ¶¶ 37-49, 56-58.) Only two clearly alleged facts connect Ralston to the events leading up to this litigation: 1) he was hired by Alliance weeks before Thomas's resignation and 2) he now works for Achieve 1. (*Id.* at ¶¶ 13, 29.)

All other allegations against Ralston are against "the Defendants" generally. While the Court is not aware of any bright-line prohibition on pleading facts in this manner, any such allegations must nevertheless follow the strictures of Rule 8(a) and, where appropriate, Rule 9(b). Indeed, other courts have at times struggled with allegations drafted in this manner, finding the failure to meet Rule 9's heightened standard "exacerbated" where "multiple defendants are involved, but the complaint does

---

[3] While the conspiracy is alleged to have occurred "*at least* in November 2011," leaving open the possibility of an earlier-formed conspiracy, that does not bring Ralston within its ambit. (Compl. at ¶ 35 (emphasis added).) This is because, by its own allegations, Alliance admits that Ralston did not join its company until March 2012. (*Id.* at ¶ 19.) There are no other allegations showing that Ralston entered the picture before March 2012 or subsequently joined an already-formed conspiracy against Alliance.

not clearly identify which Defendant played which role." *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 466 (D. Md. 2012); *see also Goodrow v. Friedman & Macfadyen, P.A.*, No. 3:11cv20, 2012 U.S. Dist. LEXIS 182188, at *9 (E.D. Va. Dec. 27, 2012) (quoting *Grant*, 871 F. Supp. 2d at 466). In the Complaint now under review, many of the omnibus allegations against "the Defendants" are conclusory, meriting minimal credit. *Iqbal*, 556 U.S. at 678. Thus, the analysis requires the Court to parse each claim to determine whether the undifferentiated allegations, if true, plausibly state a claim against Ralston on each count.

## A.    Claims Governed Only By Rule 8

The sufficiency of all but one of the claims at issue is determined solely by analysis under Fed. R. Civ. P. 8(a). Thus, each claim must be accompanied by factual allegations that "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (citations omitted), such that the claim is "plausible on its face." *Id.* at 570. In conducting the appropriate review, the Court must remain mindful of the indiscriminate character of those allegations against the "Defendants." While such pleading is not prohibited *per se*, it impacts the Court's plausibility analysis with respect to Ralston. This is because many of the allegations against the "Defendants" occurred *before* Ralston was even hired by Alliance. Without additional factual allegations, Ralston's ties to certain assertions are too attenuated to survive scrutiny under Rule 12(b)(6).[4]

---

[4] In this way, it appears that Alliance has pleaded itself out of court with respect to at least some claims against Defendant Ralston. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (Posner, J.) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008); *EEOC v.*

## 1. Breach of Fiduciary Duty

In Count I, Alliance alleges that all Defendants breached a fiduciary duty owed to it as their employer. To state a claim for a breach of fiduciary duty under Virginia law, Alliance must allege: (1) the existence of a fiduciary duty; (2) breach; and (3) damages resulting from the breach. *Cartensen v. Chrisland Corp.*, 442 S.E.2d 660 (Va. 1994). It is well-established that an employee, including an at-will employee, "owes a fiduciary duty of loyalty to his employer during his employment." *Williams v. Dominion Tech. Partners, LLC,* 576 S.E.2d 752, 757 (Va. 2003) (citation omitted). A plaintiff may demonstrate such a breach by alleging that the employee "'misappropriated trade secrets, misused confidential information, [or] solicited an employer's clients or other employees prior to termination of employment.'" *Id.* at 758 (quoting *Feddeman & Co. v. Langan Assoc.*, 530 S.E.2d 668, 672 (Va. 2000)). Moreover, "[r]esignation or termination does not automatically free a[n] [] employee from his or her fiduciary obligations." *Today Homes, Inc. v. Williams*, 634 S.E.2d 737, 744 (Va. 2006). A former employee may breach his duty to a former employer if the conduct began during employment or if post-termination competition is "founded on information gained during the [employment] relationship." *Id.*

While the extent of Ralston's involvement in a conspiracy remains hazy, Alliance has sufficiently pleaded a breach of fiduciary duty against him. The duty is established

---

*Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007); *Orthmann v. Apple River Campground*, 757 F.2d 909, 915 (7th Cir. 1985); and *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)) (recognizing that a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim.").

by Ralston's employment with Alliance and the damages are alleged by virtue of lost business. (Compl. at ¶¶ 13, 69.) The sole issue is whether these allegations, alone, suggest that Ralston has breached his fiduciary duties owed to Alliance. Although there is no claim of breach specific to Ralston, it is alleged that Achieve 1—his new employer—is now using confidential information and trade secrets taken from Alliance. Because Ralston is alleged to now work for Achieve 1, it can be reasonably inferred that he now uses the same confidential information and trade secrets learned at Alliance, as are his co-workers. (*Id.* at ¶¶ 32, 69.) If proven, this may constitute a breach of fiduciary duty. *See Today Homes*, 634 S.E.2d at 744 (using confidential information post-employment may constitute breach of fiduciary duty). Thus, Ralston's motion will be denied at this stage of the proceedings with respect to the breach of fiduciary duty claim (Count I).

## 2. Aiding and Abetting Breach of Fiduciary Duty

Count II advances what appears to be an alternative theory to the breach of fiduciary duty claim—"aiding and abetting" a breach of fiduciary duty. The legal authority for an "aiding and abetting" claim is not well-established in Virginia. Ralston contends that no such claim exists; however, this oversimplifies the question. Accurately stated, the Supreme Court of Virginia has refrained from either recognizing or rejecting a separate "aiding and abetting" tort. *See, e.g., Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 411-12 (Va. 2004). Reviving Virginia precedent from more than 100 years ago, Alliance cites *Patteson v. Horsley*, 70 Va. 263 (1877), for the proposition that "one who aids and abets a third party's breach of fiduciary duty may be held liable for

providing such assistance." (Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n") at 15, ECF No. 20.)[5]

It is not entirely clear that *Patteson* created a separate tort of "aiding and abetting," but it does appear to recognize joint tortfeasor liability if a defendant: (1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it. *Patteson*, 70 Va. at 270-71. Even if this claim is not to be treated as a separate tort, it appears to be a viable alternative theory to secure joint liability, and the Court will address it as such for purposes of resolving the pending motion.

Applying the *Patteson* elements to the allegations raised in the Complaint, Alliance has sufficiently pleaded an aiding and abetting breach of fiduciary duty claim. As with the underlying breach of fiduciary duty claim, it is sufficient that Ralston knew that his co-workers and his new employer, Achieve 1, were breaching the fiduciary duty that they owed to Alliance, particularly since he was still employed by Alliance for some duration while this was transpiring. (Compl. at ¶¶ 13, 29, 32.) With this knowledge in hand, he nevertheless accepted employment with Achieve 1, thereby receiving benefits derived from their breach of fiduciary duty. (*Id.* at ¶ 13.) Under this alternative theory,

---

[5] In citing *Patteson*, Alliance has mistakenly offered a quote that has its actual origins in the case of *Tysons Toyota, Inc. v. Globe Life Ins. Co.*, Nos. 93-1359, 93-1443, 93-1444, 1994, 1994 WL 717598, at *3 (4th Cir. Dec. 29, 1994). In truth, *Patteson* stands for the proposition that one who knows of a breach of trust and participates in it for his own benefit is liable as a joint tortfeasor. 70 Va. at 270-71. In its unpublished decision in *Tysons Toyota*, the Fourth Circuit assigned an "aiding and abetting" label to such a claim, and the Court accepts this as short-hand for the type of claim set forth in *Patteson*. The label is of little consequence. Regardless of the particular terms used, the Court will apply the *Patteson* elements to assess the "aiding and abetting" claim as an alternative theory of recovery.

Ralston did not need to actually use the confidential information himself; it is sufficient that he knew that his new employer, Achieve 1, was using such confidential information to the benefit of its employees, including Ralston himself. *See Patteson*, 70 Va. at 270-71. Accordingly, his motion to dismiss the aiding and abetting claim (Count II) will be denied.

### 3. Misappropriation of Trade Secrets

In Count III, Alliance brings a claim for misappropriation of trade secrets against all Defendants, including Ralston. Under the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code §§ 59.1-336 through 343, misappropriation is defined as:

1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

2. Disclosure or use of a trade secret of another without express or implied consent by a person who:

    a. Used improper means to acquire knowledge of the trade secret; or

    b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

        (1) Derived from or through a person who had utilized improper means to acquire it;

        (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

        (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

        (4) Acquired by accident or mistake.

Va. Code § 59.1-336. In turn, "trade secrets" are defined as "information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process," that:

1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* The VUTSA also contains the following preemption provision:

A. Except as provided in subsection B of this section, this chapter displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret.

B. This chapter does not affect:

1. Contractual remedies whether or not based upon misappropriation of a trade secret; or

2. Other civil remedies that are not based upon misappropriation of a trade secret; or

3. Criminal remedies, whether or not based upon misappropriation of a trade secret.

Va. Code § 59.1-341. Ralston challenges the allegations of misappropriation as insufficient, and also attacks any breach of fiduciary duty claim as preempted by § 59.1-341. Neither argument is persuasive.

First, the preemption argument may ultimately have merit, but it is not an appropriate vehicle for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Where it "can[not] be clearly discerned [from the pleadings] that the information in question constitutes a

trade secret," the claim must proceed together with alternative tort theories of recovery. *E.I. Dupont De Nemours & Co. v. Kolon Indus.*, 688 F. Supp. 2d 443, 451 (E.D. Va. 2009) (citation omitted). This is consistent with Fed. R. Civ. P. 8(d)(2)-(3), which expressly permits alternative and inconsistent claims. Accordingly, the preemption argument fails, at least for the time being.

Turning to the substance of the claim, Alliance has sufficiently alleged misappropriation against Ralston. Although there are several permissible avenues which the claim may be prosecuted under Va. Code § 59.1-336, Alliance need only satisfy one of the available subsections to state the claim. By virtue of his current employment with Achieve 1, Alliance has alleged that Ralston is now using its trade secrets in his current employment. (Compl. at ¶¶ 13, 69, 90.) Throughout his employment with Alliance, Ralston routinely acknowledged his access to confidential information, including information allegedly constituting trade secrets. (Compl. at ¶¶ 21, 23, 32-33.) His knowledge of the trade secrets, coupled with his alleged use of them (or even knowledge of others' use) at Achieve 1, is sufficient to raise a reasonable inference of misappropriation under Va. Code § 59.1-336. The motion to dismiss the misappropriation claim in Count III will be denied for this reason.

### 4. Conversion

Count IV asserts a claim for common law conversion. "A person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving the owner of possession, or any act of dominion wrongfully exerted over the property in denial of, or inconsistent with, the owner's rights." *Simmons v. Miller*, 544

S.E.2d 666, 679 (Va. 2001). "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 520 (E.D. Va. 2001) (citation omitted).[6]

Because there are no specific allegations against Ralston, and because he joined Alliance five months after the alleged conspiracy was underway, it is not alleged that he was the actor who converted property to Achieve 1's use. Both parties cite *James River Mgmt Co., Inc. v. Kehoe*, 3:09cv387, 2009 WL 3874167 (E.D. Va. Nov. 18, 2009), in which the district court dismissed a conversion claim where the pleadings failed to "specify who converted what." *Id.* at *8. The Court in that case specifically required the plaintiff to identify the actors involved in the conversion. It is clear from the context of that decision that the Court was not applying the heightened pleading requirement generally applicable to all conversion claims. Thus, it does not necessarily control the analysis here.

Nevertheless, the temporal gap between the alleged tort in this case and the hiring of Ralston render it implausible that he was engaged in the conversion. In other words, the property in question was converted to Achieve 1's use before Ralston appeared on the scene in March 2012. (Compl. at ¶¶ 35-42, 44-49, 86, 88.) This temporal gap highlights

---

[6] Generally, conversion applies only to tangible property, though many courts have recognized conversion claims where intangible property rights are merged with a document, such as a stock certificate, promissory note, or bond. *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 906 (Va. 1994). Here, many of Alliance's alleged property rights are intangible, though each appears to have been reduced to a tangible medium, such as databases or written procedures. (*E.g.*, Compl. at ¶¶ 86, 88.)

the fact that Ralston was not so similarly situated to his co-workers that it is reasonable to

include him in a broad definition of "Former Employee Defendants," with respect to this

claim—thereby sweeping him into a series of tortious activities that occurred *before he*

*was even involved.* Thus, the conversion claim (Count IV) against Ralston will be

dismissed.

### 5. Tortious Interference with Contract

In Count VI, Alliance alleges that all Defendants—including Ralston—tortiously

interfered with Defendant Pierce's employment contract. To state a claim for tortious

interference with a contract that is not terminable at-will, as Alliance asserts is the case

here, it must allege: (1) the existence of a valid contractual relationship or business

expectancy; (2) knowledge of the relationship or expectancy on the part of the alleged

tortfeasor; (3) intentional interference inducing or causing a breach or termination of the

relationship or expectancy; and (4) resulting damages. *Preferred Sys. Solns., Inc. v. GP*

*Consulting, LLC*, 732 S.E.2d 676, 687-88 (Va. 2012) (citing *Maximus v. Lockheed Info.*

*Mgmt. Sys. Co.*, 493 S.E.2d 375, 378 (Va. 1997); *Duggin v. Adams*, 360 S.E.2d 832, 836

(Va. 1987)). Unlike tortious interference with an at-will contract, which is entitled to less

protection, Alliance need not allege the added element of "improper methods." *Cha v.*

*Korean Presbyterian Church*, 553 S.E.2d 511, 515 (Va. 2001) (citation and internal

quotation marks omitted).

The pleadings here are devoid of any allegation remotely suggesting that Ralston

was familiar with the terms of Pierce's employment contract. Nor is there any allegation

that Ralston committed any intentional act designed to interfere with the contract between

Pierce and Alliance. It is not plausible, merely because of his employment with Alliance and subsequent employment with Achieve 1, that Ralston would be familiar with employment terms unique to Pierce. And even considering the allegations against the "Defendants" generally, the allegations of knowledge and intentional interference are conclusory. (*See* Compl. at ¶¶ 110-111.) While knowledge and intent may be alleged generally, it must still be accompanied by allegations of fact giving rise to a reasonable inference of knowledge or intent. *Iqbal*, 556 U.S. at 686. Thus, Ralston's motion to dismiss the tortious interference with a contract claim will be granted.

### 6. Tortious Interference with Existing Contract, Contract Expectancy, Prospective Business Relationship and Economic Advantage

In Count VII, Alliance alleges that Ralston, together with Achieve 1 and his co-workers, tortiously interfered with existing contracts, contract expectancies, prospective business relationships and economic advantages. Specifically, this claim charges that Ralston interfered with the contracts and economic expectancies that Alliance held with its existing and prospective customers. To establish the claim, Alliance must allege the four elements of a tortious interference claim set forth *supra*, at Section III(A)(5), as well as the added element of "improper methods." *Cha*, 553 S.E.2d at 515. "While improper methods or means need not be 'inherently illegal or tortious,'" the "misuse of inside or confidential information" or "breach of a fiduciary relationship" will suffice. *Preferred Sys.*, 732 S.E.2d 688 (citing *Maximus, Inc.*, 493 S.E.2d at 378; *Duggin*, 360 S.E.2d at 836-37). With respect to this claim, Alliance has satisfied federal pleading requirements.

The analysis here is distinct from that addressing Count VI. While the pleadings fail to show in more than conclusory fashion that Ralston had any knowledge of Pierce's *employment* contract, it is reasonable to infer that he knew about Alliance's *customer* contracts. He was employed as an "Account Executive" with Alliance, so it is reasonable to infer that he possessed at least some knowledge of its existing and prospective customer base. (Compl. at ¶ 13.) He is now employed with Achieve 1 and, as previously discussed, *supra* at Section III(A)(1), Alliance has sufficiently alleged that Ralston breached a fiduciary duty by using confidential information learned from Alliance in his new employment. (Compl. at ¶¶ 32, 69.) In doing so, it is plausibly alleged that Ralston, together with his co-workers at Achieve 1, are diverting both current and prospective customers from Alliance. (*Id.* at ¶ 69.) Taken together and assumed to be true, these allegations render plausible the claim for tortious interference with existing contract, contract expectancy, prospective business relationship and economic advantage. Accordingly, the motion to dismiss will be denied as to Count VII.

### 7. Common Law Conspiracy

In Count VIII, Alliance claims that Ralston, in league with his cohorts, participated in a common law conspiracy against it. Pursuant to Virginia law, "[a] civil conspiracy is: (1) a combination of two or more persons, (2) by some concerted action, (3) to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985). The "unlawful act" element requires that at least one member of the conspiracy commit an "underlying tort." *Almy v.*

17

*Grisham*, 639 S.E.2d 182, 188 (Va. 2007). This can include the inducement of a breach of contract, as alleged in this case. *Catercorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 281 (Va. 1993).

Due in part to Alliance's undifferentiated and conclusory pleading, it has failed to allege that Ralston "combin[ed]" with Achieve 1 and his co-workers to engage in "concerted action" to commit any tort. *Heckler Chevrolet*, 337 S.E.2d at 748. According to Alliance, "the Defendants acted in concert" beginning as early as November 2011— approximately five months before Ralston joined either company. (Compl. at ¶¶ 29, 35.) While it may be "conceivable" that Ralston joined the already-formed conspiracy when he was hired in March 2012, there are no facts alleged to raise such an inference "above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the Court will dismiss the common law conspiracy claim (Count VIII) against Ralston.

## 8.    Statutory Business Conspiracy[7]

In a similar vein as Count VIII, Count IX advances a conspiracy claim—this time under Virginia's business conspiracy statute. A business conspiracy arises when two or more persons "combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever." Va. Code § 18.2-499; *see also N. Va. Real Estate, Inc. v. Martins*, 720 S.E.2d 121, 133 (Va. 2012). The temporal deficiency with respect to the common law conspiracy claim is equally fatal here. *See supra*, Section III(A)(7). Ralston's employment with Achieve 1 might constitute a "combination" or "association," as those terms are used in § 18.2-499—but that is not enough. There must also be allegations showing that the combination was formed with "legal malice," meaning that the agreement was formed to achieve "an unlawful act or an unlawful purpose." *Advanced Marine Enters., Inc. v. PRC, Inc.*, 501 S.E.2d 148, 154-55 (Va. 1998); *Hechler Chevrolet*, 337 S.E.2d at 748.

---

[7]Some courts have held that "business conspiracy, like fraud, must be pleaded with particularity." *Gov't Emples. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004). As those courts have found, the "heightened pleading standard prevents every business dispute over unfair competition becoming a business conspiracy claim." *Id.* However, it is not necessarily the case that all conspiracies must satisfy Rule 9's particularity requirement. One recent unpublished Fourth Circuit decision suggests that there is a distinction between conspiracy claims at large and those conspiracies based on fraud—the latter of which must satisfy Rule 9. *See Terry v. SunTrust Banks, Inc.*, No. 11-1704, 2012 U.S. App. LEXIS 13632, at *35 (4th Cir. July 2, 2012) (requiring conspiracy claim that alleges fraud to satisfy Rule 9). Here, the Court has reviewed both the common law conspiracy and statutory conspiracy charges and concludes that they are not based on a conspiracy to commit fraud, but instead on a conspiracy to misappropriate trade secrets and usurp business opportunities. Thus, the conspiracy counts will not be held to the heightened requirements of Rule 9. But if they were, that would serve only to bolster the Court's conclusion.

There are no allegations that Ralston ever joined in the conspiracy that was formed months before he joined Alliance, let alone that he did so with malice or with knowledge of others malice. Thus, it cannot be reasonably inferred that he later accepted employment with Achieve 1 with the present intention of accomplishing an illegal purpose—even if tortious conduct ultimately ensued. *Advanced Marine*, 501 S.E.2d at 154-55. Because malice is not alleged against Ralston, the statutory business conspiracy claim against him (Count IX) will be dismissed.

**B.      Allegations of Fraud Governed by Rule 9[8]**

Count X alleges that all Defendants defrauded Alliance. Claims based on fraud must comply with the heightened pleading requirements of Rule 9. *Harrison*, 176 F.3d at 784. When facts are pleaded indiscriminately against a group, rather than against particular defendants, Rule 9(b)'s requirements are not met. *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 551-52 (6th Cir. 2012) ("[Complaint] fails to allege the speaker of the alleged statements, instead referring vaguely only to 'defendants,' of which there are many in this case."). This is because the "time, place, and manner" of the false statements cannot be ascertained without identifying the speaker. *Id.* at 551 (citing *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012)). *See also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal citations omitted); *Harrison*, 176 F.3d at 784.

---

[8] As Ralston has noted in his Reply Brief, Alliance did not respond to his arguments in favor of dismissing the fraud claim. (Def.'s Reply mem. Supp. Mot. Dismiss at 5, ECF No. 21; Pl.'s Opp'n at 10-21.) Nevertheless, the Court addresses that claim, finding it insufficient.

To plead fraud under Virginia law, a plaintiff must allege: (1) a false representation; (2) of a material fact; (3) that was made intentionally and knowingly; (4) with the intent to mislead; (5) reasonable reliance by the party misled; and (6) resulting damage to the party misled. *Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581 (Va. 2003) (citations omitted). In *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369 (4th Cir. March 26, 2012), the Fourth Circuit held that a conclusory allegation that a defendant's "statements were 'known by [him] to be false at the time they were made' . . . is entirely insufficient." *Id.* at 378. Specifically, the Fourth Circuit held that such a statement was nothing more than "a mere recitation of the legal standard" of intent. *Id.* The allegations were held to be "precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Id.*

Here, Alliance has not alleged any such facts against Ralston. And because the indiscriminate allegations against the "Defendants" do not identify the "time, place, and manner" of the purported fraud, especially with respect to Ralston, Alliance has not satisfied Rule 9's heightened pleading requirements. *See Harrison*, 176 F.3d at 784. Accordingly, the fraud claim against Ralston (Count X) will be dismissed.

## IV. CONCLUSION

As asserted against Ralson, the Court finds that Alliance has failed to plead claims for conversion; tortious interference with an employment contract; common law conspiracy; statutory business conspiracy; or, fraud. However, the Court finds that Alliance has sufficiently alleged that Ralston breached a fiduciary duty; aided and abetted a breach of fiduciary duty; misappropriated trade secrets; and, that he tortiously interfered

with an existing contract, contract expectancy, prospective business relationship and economic advantage to satisfy the requirements of Rule 8(a). Therefore, Defendant Ralston's Motion to Dismiss will be granted, in part, and denied, in part, consistent with these findings.

An appropriate Order will accompany this Memorandum Opinion.


                                          /s/
                                          Henry E. Hudson
                                          United States District Judge

Date: Jan. 11, 2013
Richmond, Virginia